CASE 12—EQUITY—FEBRUARY 2, 1882.

# I. A. Spalding, adm'r, v. Geo. Henshaw.

### APPEAL FROM UNION COURT OF COMMON PLEAS.

1. J. P., as principal, and G. P., as surety, owed appellee, Henshaw, a note of $1,000. J. P. delivered to his surety, G. P., the money, which he promised to pay to the obligee. The principal afterwards sued his surety, and recovered a judgment against him for the money so delivered. *Held*—that the obligee has no lien upon the fund, there being no privity between him and either of the obligors as to the money delivered.

2. The principal had the right to countermand the appropriation and recall the money before it came to the obligee's hands.

I. A. SPALDING AND W. P. D. BUSH FOR APPELLANT.

There was no privity between either John or George Payne and appellant. The principal had the right to revoke the agreement, and reclaim from his surety the money deposited. There is no trust created in favor of appellee by virtue of the agreement between the principal and his surety. (107 Mass., 39; 15 N. H., 129; 1 Vt., 366; 31 Conn., 25; 1 Har. & G., 484; 10 Mich., 426; 18 Cal., 80; 30 Ind., 112; 43 Wis., 319; 40 N. Y., 432; 49 *Ib.*, 318; 2 Denio, 45; 3 Barb., 209; Story's Eq., 1045, 1046; Story on Agency, secs. 463, 476; 33 N. H., 171; 2 Kent's Comm., 643 to 646.)

A. DUVALL AND D. H. HUGHES FOR APPELLEE.

The delivery by John Payne, principal on the note, to George Payne, his surety, of the money to pay their note to appellee, created a trust in favor of the obligee on the note, and his lien upon the fund is prior to that of the general creditors. The party for whose sole benefit a contract is made may sue thereon in his own name, although the engagement be not directly to or with him. (Allen v. Thomas, 3 Met., 198; 3 B. Mon., 230; 1 Chitty on Pleading, page 4 and notes; Story on Bailments, sec. 103.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, George Henshaw, held the note of John B. Payne, with George Payne as surety, for the sum of one thousand dollars, payable in twelve months from the 7th of September, 1857. In March, 1857, John Payne desiring to pay the note, gave to George Payne, the surety,

the sum of one thousand dollars for that purpose, and took from him the following receipt:

"Received of J. B. Payne one thousand dollars, which I promise to pay to George Henshaw, in gold, to pay a note that George Henshaw holds on him, and I am surety to.

"(Signed)                      GEORGE PAYNE."

In May, 1861, John B. Payne, the surety, George Payne having failed to pay this money to Henshaw, instituted an action against him, in which it is alleged that *he paid over* to George Payne the one thousand dollars on the 25th of March, 1857, to be paid to Henshaw, and took his receipt therefor; that the latter had failed to pay the money to Henshaw as directed, and still refuses to do so, or to refund to him, John B. Payne, the money, although often requested so to do. He set up other claims against George in the same action that have no connection with the matter in controversy, with the exception that a general attachment was levied on the property of George Payne to secure the various demands against him.

John B. Payne, it seems, was embarrassed with debt as well as George, and I. A. Spalding, as administrator of one Powell, and other parties, brought three actions against John B. Payne, and obtained attachments that were levied on the estate of John, and garnisheed the claim of $1,000 owing by George Payne. George Payne died, and the action of John Payne was revived against his administrator, and in April, 1868, there was a judgment rendered in favor of John Payne against the administrator for the $1,000. There were various actions consolidated in the effort to make the debts due by John and George Payne, and in April, 1868, $500 of the judgment against George Payne's administrator, and in favor of John B. Payne, was directed by the

court to be paid to the attorneys of John Payne, or they were given a lien to that extent.

Henshaw in March, 1862, brought his action, and recovered a judgment against George Payne on the note for the thousand dollars executed by him and John, and in October, 1869, filed a petition to be made a party to the action of John Payne against George Payne, alleging in the original petition and the amendment that he had recovered a judgment against George Payne on the note, the delivery over by John to George of the $1,000 to pay it, and the recovery by John Payne of George Payne's administrator on the receipt for the $1,000, and its collection by I. A. Spalding, the attorney of John Payne, who then, as is alleged, had it in his possession. He sued out an attachment, and garnisheed this money in the hands of Spalding.

Spalding filed a demurrer and answer. The answer alleges that, as administrator of Powell, he had garnisheed or attached all these funds owing to John Payne, to satisfy the claim of Powell. That after applying all these claims the debt to the Powells remained unsatisfied; and that he had, in addition, purchased of the heirs of Powell their interest, and was entitled to the fund. The claim of Powell's administrator against John B. Payne was large, and the action to recover, with attachments issued and levied, had been pending long before the attempt on the part of the appellee, Henshaw, to subject the fund arising from the judgment against George Payne, based on the receipt for $1,000.

It is manifest from the facts contained in the record that the court below was of the opinion that the execution of the receipt by George Payne to John B. Payne, in which the former agreed to pay the $1,000 to the appellee Henshaw, gave to the latter a lien or an equity superior to all

other creditors.   Both John and George Payne were the obligors in the note to the appellee, and the fact that John had furnished to George Payne, the surety, the money to enable him to satisfy the debt, did not increase or diminish their liability to Henshaw (the appellee), or give to him any additional security for his debt.   He already had George Payne bound as surety on the note, and if he had instituted an action against him could have recovered only the $1,000. This sum he did recover of George in an action on the note in 1862, and if he had instituted an action after this to have recovered on the receipt, by reason of the agreement between John and George Payne, the judgment on the note as to George could have been pleaded in bar, as he was not entitled to two judgment for the same debt.

There was nothing to prevent an execution on the judgment rendered on the note, or a resort to all incidental remedies to enforce it.   The appellee at no time agreed to look to George Payne alone for the debt, and seems not to have known until October, 1869, that George had executed the receipt, in which he promised to pay the $1,000 then secured to him in discharge of the note.   It is insisted, however, that the receipt was in effect an obligation by George Payne to pay the appellee the $1,000, and although he had recovered a judgment on the original note against George, yet as the money was collected on an obligation belonging, or for the benefit of the appellee, that he is entitled to it.   Adopting therefore the theory maintained by the appellee for the purpose only of making the inquiry suggested by it, and regarding George Payne, who received this money, as an entire stranger to the original note, and his promise made in no other manner than as found in the receipt, and the appellee is not entitled to recover.   He at

no time ratified, accepted, or confirmed the action of John Payne and George with reference to this money, and in fact never heard of it, so far as this proof shows, until after John had recovered it back from George Payne, and after it had been subjected, or a lien created upon it by the creditors of John Payne for the payment of his debts. George Payne received the money as the agent only of John Payne, and the latter, before its acceptance by the appellee, or his agreement to look to George for payment, could have revoked the direction or order to pay it to the appellee, and this he certainly did by instituting his action and recovering a judgment for the money upon the alleged ground that his agent had failed to pay it to the appellee.

He might as the surety, under certain circumstances, have held it for indemnity; but we are discussing this case as if George was in no manner liable, except on his promise to pay the money to Henshaw.

That Henshaw might have maintained an action against George, if he had not been already liable, is settled by several adjudged cases in this court. A promise of A to B, upon a sufficient consideration, to pay C a sum of money, may be enforced by C; but when the parties making the contract rescind or cancel it before its acceptance by the third party for whose benefit it is made, the contract is at an end. There is no trust in such a case as this so as to make the contract irrevocable, or facts authorizing the presumption that the party benefited has assented to the agreement. Here the appellee could have instituted an action at any time to recover on the original note, as he did do, and recovered a judgment. Taking the name of George Payne from the note, and it was a delivery by John Payne to George of $1,000 to pay this debt, and the debtor had the

right at any time, before its acceptance by the creditor, to demand its payment back to him, to be appropriated, if he desired, for other purposes.

In the case of Davis v. Calloway, 30 Indiana, in an agreement between Calloway and Kiplinger, Calloway agreed to pay Davis $100.   It appeared from the second paragraph of the petition that the parties had rescinded the agreement. The court said:

"Until the acceptance by Davis of the promise by Calloway, the parties to the agreement had the right to rescind."

In the case of Barret v. Hughes, 43 Wisconsin, 319, in discussing a kindred question, the court said:

"After knowledge of and assent to such engagement by the person for whose benefit it is made, his right of action on it cannot be affected by a rescission of the agreement by the parties thereto."

In 33 New Hampshire, 171, it is said:

"A party who deposits money with another, to be appropriated for the benefit of a third person, being under no legal obligation to appropriate it, has a right to countermand the appropriation, and recall the money at any time before it is appropriated, or before a privity has been created between the depositary and the beneficiary that amounts to an appropriation of it."

In Story on Bailments, sec. 210:

"In cases of mandates, when the thing is to be delivered to a third person, if the latter has no vested interest in it, the bailor may revoke the bailment at any time."

There is no pretense in this case of any release of the original note; but, on the contrary, after the receipt was executed, a judgment was obtained upon it, and not until John

Payne had recovered a judgment against George Payne's administrator for the failure to pay this money over, did the appellee attempt to assert any claim apart from ·the original note against George Payne; and if he had, no recovery could have been had, as he then had a judgment in his favor against George for the $1,000. No lien existed on the fund, and none could have been enforced, as against these creditors, as we have already shown, if George Payne had stood in no other light than as a mere depositary of the money. It had been recovered from him by John Payne; and Spalding, in his representative capacity, and in his individual right, insists that he has already appropriated it. The case must go back, and permission given the appellant to file his amended answer, and the questions as to the priority of liens, by reasons of the various attachments and judgments rendered, can be heard and determined.

· The judgment is reversed, and cause remanded for further proceedings not inconsistent with this opinion.